Filed 4/27/22  In re Richardson CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re EUGENE RICHARDSON<br><br>  on Habeas Corpus. | A162474<br><br>(Alameda County<br>Super. Ct. No. C164916) |

This case is before us following the California Supreme Court's order to show cause before this court why petitioner is not entitled to relief on his writ of habeas corpus.  Petitioner claims his counsel rendered ineffective assistance by failing to argue that petitioner's youth at the time of the offense should be one of the factors considered during the hearing under Penal Code section 1170.95[1] to determine if he was eligible for resentencing.

The People filed a return, and petitioner filed a traverse and lodged exhibits.  Pursuant to our request, the parties submitted supplemental briefing regarding the propriety of consideration of exhibits submitted with the traverse.

We grant the petition and remand for a new hearing under section 1170.95 where the trial court shall consider petitioner's youth at the time of

---

[1] All statutory references are to the Penal Code unless otherwise stated.

1

the offense as one of the factors in determining whether petitioner acted with reckless indifference to human life.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.** *Trial, Verdict, and Sentence*

We incorporate the facts from our prior opinion in petitioner's direct appeal (*People v. Richardson* (June 4, 2013, A134783) [nonpub. opn.] pp. 2–3 (*Richardson I*)), which stated as follows:

"On the evening of October 15, 2009, Wayl Al Junaidi's mother gave him $20 and sent him to buy milk at a [store] near their residence. When he left home, he had a brown trifold wallet and a diamond ring. Later that evening, a police officer . . . discovered the wounded Al Junaidi in a parking lot . . . in Oakland. Al Junaidi later died at [a hospital], and a forensic pathologist testified that the cause of death was a gunshot wound. No money, wallet, or jewelry were [*sic*] recovered from the location at which the victim was found.

"At trial, [R.C.] testified that on the night of October 15, 2009, he was cleaning up in the parking lot when he saw a red van pull up. Three men got out of the van and ran past him. [R.C.] saw the victim walking along Foothill Boulevard and then heard a loud pop. He saw the victim fall, and then the three men ran back to the red van. One man carried a silver pistol about six to eight inches in length. The red van then drove away. [R.C.] approached the victim, who was bloody but still alive. The entire incident lasted only three to five minutes.

"[R.C.] later repeated his story to a police investigator. He told the investigator he saw three men come out of a red van . . . and walk past him as he was cleaning up the parking lot. [R.C.] identified Richardson and another suspect from photo lineups. [R.C.] had identified the same two suspects at

2

the preliminary examination. He said Richardson stood over the victim and was carrying the gun when the men returned to the van.

"[M.A.'s] bedroom window looked out over the parking lot. She was home on October 15, 2009[,] before 11:00 p.m., and when she looked out at her car in the parking lot, she saw the tops of three men's heads. She heard a loud bang and looked out the window again. [M.A.] saw one man running away toward the red van, one man standing by a dumpster, and a third man struggling and arguing with the victim. The man struggling with the victim was trying to 'put his hands into the victim's sides' and 'was putting his hand in one area and another as if he were looking for something[.]' The man was bent over the victim, and it looked as though he was trying to take something from him. The man with the victim wore dark pants and a dark jacket and had shoulder-length braids. After about a minute the man with the victim and the man near the dumpster ran to the red van where the third man had the engine running. [M.A.] saw the victim take a step and then fall to the ground.

"[M.A.] later identified Richardson as the man struggling with the victim. At trial she remembered his face although his hairstyle was different from the braids he had worn on the night of the murder. Her identification was based on Richardson's face, which she had seen clearly when he passed by her window.

"[S.R.] testified she knew Richardson for about two months because he was dating her sister. She could not identify Richardson in court, but she had identified him earlier from a police photograph. [S.R.] said Richardson had showed her a large man's ring with multiple diamonds on it and had asked her opinion about its value. He told [S.R.] he had gotten the ring in a robbery when he killed 'an Arabian boy.' "

3

The jury found Richardson guilty of first degree felony murder (§ 187, subd. (a); former § 189) and found true the allegation that he personally used a firearm (§ 12022.53, subd. (b)). It found not true the allegations that he " 'personally and intentionally discharged a firearm and caused great bodily injury or death to [Al Junaidi]' " and that he "personally and intentionally discharged a firearm" (§ 12022.53, subds. (c), (d)). The trial court sentenced Richardson to 25 years to life for murder and to a consecutive 10-year term for the firearm use enhancement. In June 2013, we affirmed the judgment. (*Richardson I, supra*, A134783, at pp. 1, 4–5, 16.)

## II.   *Section 1170.95 Petition and Appeal from Denial of Petition*

In January 2019, Richardson filed a petition for writ of habeas corpus, citing section 1170.95, which the trial court treated as a petition for resentencing. Petitioner argued he could not be convicted of felony murder under current law and was entitled to resentencing under section 1170.95. The trial court found petitioner made a prima facie showing he was entitled to relief under section 1170.95. The People's written response attached our decision in *Richardson I* and argued that Richardson was a major participant in the robbery and acted with reckless indifference to human life. The People focused on the facts that petitioner was armed with a gun and actively robbed the victim after the victim had been shot and never sought aid for the victim. The People's response also argued that Richardson, who was the only person observed with a gun, was likely the actual killer.

Richardson's counsel filed a brief in support of resentencing in which he relied upon the witness testimony of M.A., R.C., and S.R. He argued that the jury's not true findings on the two allegations of intentional discharge of a firearm (§ 12022.53, subds. (c), (d)) established that he was not the actual killer. He further argued that under the standards outlined in *People v.*

4

*Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), the People cannot prove beyond a reasonable doubt that Richardson acted with reckless indifference to human life.

In advance of the evidentiary hearing, the People filed a memorandum arguing that the evidence in the trial record established beyond a reasonable doubt that Richardson was the actual killer and/or that he acted with reckless indifference to human life as a major participant in the robbery. The People asked the trial court to review the trial testimony of R.C., M.A., S.R., Sergeant Tony Jones and Detective Jason Andersen.

At the hearing, the People argued Richardson was ineligible for resentencing because the trial record evidence established Richardson was the actual killer despite the not true findings on the section 12022.53, subdivisions (c) and (d) allegations. In support of this argument, the People pointed to evidence that Richardson was the only person seen with a gun and to S.R.'s testimony that Richardson admitted to her that he was the shooter. The People also argued the evidence supported a finding that Richardson was a major participant who acted with reckless indifference to human life. Richardson's counsel responded that there was insufficient evidence to find Richardson was the actual killer because of the jury's not true findings on the intentional discharge allegations and that Richardson's comment to S.R. may have been "a 16-year-old bragging . . . ." He further argued that Richardson's acquittal on the allegations that he intentionally discharged a firearm established that the jury did not believe S.R. Richardson's counsel conceded that Richardson was a major participant in the robbery, but he argued that the facts did not support a finding of reckless indifference to human life. Other than counsel's comment that Richardson's statement to S.R. may have been "a 16-year-old bragging," counsel did not reference Richardson's age.

Nor did he offer any evidence or argument as to how Richardson's youth impacted the determination of whether he acted with reckless indifference to human life.

The trial court stated it read the testimony of M.A., R.C., and S.R., and portions of the testimony of Sergeant Jones and Detective Andersen. The trial court found that the facts supported a verdict beyond a reasonable doubt that Richardson was the actual killer. In addition, it noted that the parties agreed Richardson was a major participant in the robbery, then found that the evidence also proved Richardson demonstrated reckless indifference to human life.[2] However, the record is silent as to whether the trial court considered Richardson's age as a factor. The trial court concluded that "the prosecution has proved beyond a reasonable doubt under one theory or the other that Mr. Richardson is ineligible under this statute for resentencing," and it denied the petition.

Richardson appealed from the denial of his petition, and we affirmed the trial court's decision on the grounds that the trial court correctly found Richardson to be a major participant in the felony who acted with reckless indifference to human life. (*People v. Richardson* (May 12, 2021, A159828) [nonpub. opn.] pp. 1–2, 15 (*Richardson II*).) One of the issues raised in *Richardson II* was that the trial court should have considered Richardson's age at the time of the crime in determining whether he acted with reckless indifference to human life. Our decision found that Richardson forfeited this

---

[2] Specifically, the trial court referenced the following factors: "He is present. He is there with a gun. He is involved with planning activity with the robbery. He is the person who makes off with the loss. He is the person who immediately has the ability to seek help for the person who has been shot, but instead he continues to fight that person and struggle with that person and go through that person's pockets, allowing that person to go down to the ground and die, essentially."

claim by failing to raise the issue of his age in the trial court. (*Richardson II, supra*, A159828, at p. 13.)

## III. *Habeas Corpus Petition*

While the appeal in *Richardson II* was pending, Richardson filed a petition for a writ of habeas corpus arguing that his counsel rendered ineffective assistance regarding his section 1170.95 petition. Among other claims, Richardson asserted his counsel "failed to raise the fact petitioner was only 16 years old and should not be held to the same standard of 'reckless indifference' as a fully mature adult offender . . . ." We issued an order summarily denying Richardson's petition.

On July 12, 2021, Richardson filed a petition for writ of habeas corpus in the California Supreme Court asserting the same arguments as in his earlier habeas corpus petition filed with this court. The California Supreme Court issued an order to show cause stating: "The Secretary of the Department of Corrections and Rehabilitation is ordered to show cause before the Court of Appeal, First Appellate District, Division Five, when the matter is placed on calendar, why petitioner is not entitled to relief based on his claim that trial counsel rendered ineffective assistance by failing to argue that petitioner's youth at the time of the offense should be one of the factors considered during the resentencing hearing under Penal Code section 1170.95, when determining whether petitioner was a major participant in the robbery who acted with reckless indifference to human life. (*People v. Banks* (2015) 61 Cal.4th 788; *People v. Clark* (2016) 63 Cal.4th 522; *In re Scoggins* (2020) 9 Cal.5th 667.)"[3]

---

[3] Richardson also filed a petition for review of our decision in *Richardson II* affirming the trial court's denial of his resentencing petition. The California Supreme Court denied review of our decision in *Richardson II*.

## DISCUSSION

The Supreme Court's order to show cause limits the issue for our consideration to whether Richardson's counsel rendered ineffective assistance by failing to argue during the section 1170.95 hearing that Richardson's youth should be considered in determining whether he acted with reckless indifference to human life.[4] In order to prevail, Richardson must establish that his counsel's performance was deficient and that the deficient performance was prejudicial, meaning that there is a reasonable probability that but for counsel's failings the result would have been more favorable to Richardson. (*People v. Rices* (2017) 4 Cal.5th 49, 80.)

To provide context for our decision as to whether Richardson's counsel rendered ineffective assistance during the section 1170.95 hearing, we first explain the legislative changes regarding felony murder and the procedures for resentencing eligibility. Then we address recent case law regarding the impact of youth in determining whether a defendant acted with reckless indifference to human life.

### I.   *Senate Bill No. 1437*

"Under the felony-murder rule as it existed prior to Senate Bill 1437, a defendant who intended to commit a specified felony could be convicted of murder for a killing during a felony . . . without further examination of his or her mental state." (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 247–248.) Senate Bill No. 1437, which became effective on January 1, 2019, restricted the application of the felony murder rule by amending sections 188

---

[4] The parties agreed in the trial court that Richardson was a major participant in the robbery, and Richardson does not argue otherwise in his habeas corpus petition. Accordingly, only the "reckless indifference to human life" prong of section 189, subdivision (e)(3)'s requirement for felony murder is at issue here. (§ 189, subd. (e)(3).)

and 189. (*Lamoureux*, at pp. 248–249.) "Section 189, subdivision (e), as amended, provides that a participant in a specified felony is liable for murder for a death during the commission of the offense only if one of the following is proven: '(1) The person was the actual killer. [¶] (2) The person . . . , with the intent to kill, aided, abetted . . . , or assisted the actual killer . . . . [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life . . . .' " (*Id.* at p. 248.)

Section 1170.95 provides a procedure for offenders previously convicted of felony murder to obtain the benefits of the changes to sections 188 and 189, retroactively. (§ 1170.95; *People v. Bascomb* (2020) 55 Cal.App.5th 1077, 1086.) A petitioner must first make a prima facie showing that: (1) the prosecutor proceeded under a felony-murder theory; (2) the petitioner was convicted of first degree murder; and (3) the petitioner could not be convicted of first degree murder under current law because of changes to section 188 or 189. (§ 1170.95, subd. (a)(1)–(3).) If a petitioner meets this prima facie threshold, then the trial court holds a hearing to determine whether to vacate the murder conviction and to recall the sentence. (§ 1170.95, subd. (d)(1).) The prosecution bears the burden to prove beyond a reasonable doubt that the petitioner is guilty of murder under amended section 188 or 189. (§ 1170.95, subd. (d)(3).)[5]

## II. *Youth at the time of the offense is a factor to be considered in deciding whether a defendant acted with reckless indifference to human life.*

As discussed in *Richardson II, supra*, A159828, at page 2, California Supreme Court authority has defined "reckless indifference to human life" as

---

[5] Senate Bill No. 775 (2021–2022 Reg. Sess.) further amended section 1170.95 and took effect on January 1, 2022. None of those amendments affect our decision.

having "a subjective and an objective element. [Citation.] As to the subjective element, '[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed,' and he or she must consciously disregard 'the significant risk of death his or her actions create.' [Citations.] As to the objective element, ' "[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." ' [Citation.] 'Awareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient' to establish reckless indifference to human life; 'only knowingly creating a "grave risk of death" ' satisfies the statutory requirement. [Citation.] Notably, 'the fact a participant [or planner of] an armed robbery could anticipate lethal force might be used' is not sufficient to establish reckless indifference to human life." (*In re Scoggins* (2020) 9 Cal.5th 667, 677 (*Scoggins*).)

Whether a defendant acted with reckless indifference to human life depends upon the totality of the circumstances. (*Scoggins, supra*, 9 Cal.5th at p. 677.) "Relevant factors include: Did the defendant use or know that a gun would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks of violence during the felony?

10

[Citation.] ' "[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient." ' [Citation.]" (*Ibid.*)

Youth is not a factor explicitly mentioned in the *Scoggins* decision, or in *Banks* or *Clark*, on which *Scoggins* relies. (*Scoggins, supra*, 9 Cal.5th at pp. 667–678; *Banks, supra*, 61 Cal.4th at p. 803; *Clark, supra*, 63 Cal.4th at pp. 618–623.) However, several recent Court of Appeal decisions have addressed this issue. *In re Moore* (2021) 68 Cal.App.5th 434 (*Moore*), which involved a defendant who was 16 years old at the time of the offense, held that "a defendant's youth is a relevant factor in determining whether the defendant acted with reckless indifference to human life" and reasoned that "the 'hallmark features' of youth—'among them, immaturity, impetuosity, and failure to appreciate risks and consequences'—are arguably more germane to a juvenile's mental state than to his or her conduct. [Citation.]" (*Id.* at p. 454.)

In *People v. Harris* (2021) 60 Cal.App.5th 939, review granted April 28, 2021, S267802, the court reversed the trial court's denial of a section 1170.95 petition without issuing an order to show cause and remanded with directions to the trial court to issue an order to show cause. (*Harris*, at p. 945.) In discussing the application of the *Banks* and *Clark* factors, the court stated that "given Harris's youth at the time of the crime [age 17], particularly in light of subsequent case law's recognition of the science relating to adolescent brain development (see, e.g., *Graham v. Florida* (2010) 560 U.S. 48 [citations]; *Miller v. Alabama* (2012) 567 U.S. 460 [citations]; *People v. Gutierrez* (2014) 58 Cal.4th 1354 [citations]), it is far from clear that Harris was actually aware 'of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of other participants.' " (*Harris, supra*, 60 Cal.App.5th at p. 960.)

11

*People v. Ramirez* (2021) 71 Cal.App.5th 970 reversed the denial of a section 1170.95 petition after an evidentiary hearing and found that the defendant's youth (age 15) at the time of the carjacking was a significant factor to be considered in determining whether he acted with reckless indifference to human life. (*Ramirez*, at p. 990.) "A juvenile's immaturity and failure to appreciate the risks and consequences of his or her actions bear directly on the question whether the juvenile is subjectively ' "aware of and willingly involved in the violent manner in which the particular offense is committed" ' and has 'consciously disregard[ed] "the significant risk of death his or her actions create." ' [Citations.]" (*Id.* at p. 991.)

We agree with the *Moore*, *Harris*, and *Ramirez* decisions insofar as they find that a defendant's age is a relevant factor to consider in determining whether a defendant acted with reckless indifference to human life. However, as the California Supreme Court has stated, in making such a determination, a court must consider the totality of the circumstances and no one factor is controlling. (*Scoggins, supra*, 9 Cal.5th at p. 677.) Thus, a defendant's age should be considered, along with the multiple other factors discussed in *Scoggins*, as part of the totality of the circumstances used to determine whether a defendant acted with reckless indifference to human life. (*Ibid.*)[6]

---

[6] *In re Harper* (Mar. 17, 2022, E076045) ___ Cal.App.5th ___ [p. 26] (*Harper*) reads *Moore* to mean that youth is the "*decisive*" factor in determining whether a defendant acted with reckless indifference to human life. We disagree that *Moore* should be read so broadly. *Moore* analyzed the various *Clark* factors and found that many suggested Moore did not act with reckless indifference to human life. (*Moore, supra*, 68 Cal.App.5th at pp. 451–453.) It further specifically stated that "youth is a relevant factor" and then concluded that under the totality of the circumstances of the case, including the defendant's youth, a rational trier of fact could not find that

12

**III.** *Richardson received ineffective assistance of counsel.*

To prevail on his claim of ineffective assistance of counsel, Richardson must demonstrate that his counsel's performance was deficient because it fell below an objective standard of reasonableness and that his counsel's deficiencies resulted in prejudice. (*People v. Rices, supra*, 4 Cal.5th at p. 80.) To establish prejudice, Richardson must show a " ' "reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant." ' " (*Ibid.*)

### A. Deficient Performance

The People do not dispute that Richardson's counsel's performance was deficient because he failed to argue Richardson's youth is a factor to be considered in determining whether he acted with reckless indifference to human life. Instead, the People contend Richardson was not prejudiced by his counsel's failure to assert youth as a factor. Richardson's petition includes a declaration from his counsel stating that he had no tactical reason for not raising the issue of the effect of youthful cognitive immaturity on the determination of reckless indifference to human life. As discussed *ante*, and as the People appear to concede, youth is a relevant factor to be considered as part of the totality of the circumstances in determining whether a defendant acted with reckless indifference to human life.

The record before the trial court at the evidentiary hearing on the section 1170.95 petition included several references to petitioner's age at the time of the crime. The section 1170.95 petition states, as one of the facts supporting the petition, that Richardson "was 16 when the crime was committed." The section 1170.95 petition also refers to the direct appeal in

Moore acted with reckless indifference to human life. (*Moore*, at pp. 454–455.)

*Richardson I* as involving issues of "[i]nability of a minor to form the requisite intent." The trial court also stated it had reviewed portions of the testimony of Detective Andersen, who testified that Richardson was 16 years old at the time of the crime. Further, during argument on the section 1170.95 petition, defense counsel noted that Richardson's statement to S.R. regarding the robbery may have been "a 16-year-old bragging to [S.R.]."

However, counsel did not argue either in his written submission or during the evidentiary hearing that the resentencing court must consider Richardson's youth in determining whether he acted with reckless indifference to human life. The mere reference to Richardson's age in his petition and in counsel's comment regarding "a 16-year-old bragging" are not equivalent to a reasoned argument regarding the possible impact of Richardson's youth on the issues before the resentencing court. (See *People v. Guerrero* (Mar. 14, 2022, B311548) ___ Cal.App.5th ___ [pp. 10–12] [finding trial court failed to consider youth-related mitigating factors under §§ 190.3 & 190.5 despite trial court's singular statement on record that defendant was 16].)

We acknowledge counsel's statement in his declaration that at the time of the resentencing hearing there was no appellate case law discussing the effect of youth on a finding of reckless indifference to human life. However, the science relating to adolescent brain development and the concept that a defendant's age should be considered in sentencing decisions is not new. (See, e.g., *Miller v. Alabama* (2012) 567 U.S. 460, 470–473, 477–480; *Graham v. Florida* (2010) 560 U.S. 48, 68; *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1388–1390.) Given the body of law holding that youth matters in sentencing decisions, it follows that youth is a relevant factor in determining a defendant's eligibility for resentencing under section 1170.95. We find that

14

Richardson's counsel's performance at the section 1170.95 hearing was deficient based on his failure to raise Richardson's youth as a factor to be considered in determining whether he acted with reckless indifference to human life.

## B.    Prejudice

Next, we consider whether Richardson was prejudiced by his counsel's deficiencies.  That is, whether there is a " ' "reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant." ' "  (*People v. Rices, supra*, 4 Cal.5th at p. 80.)

### 1.    *The People's "No Prejudice" Arguments*

The People offer two arguments in support of their position that Richardson was not prejudiced by his counsel's failure to argue youth factors during the section 1170.95 hearing.  First, they argue Richardson was not prejudiced based on our decision in *Richardson II*, which deemed forfeited Richardson's argument that the resentencing court should have considered Richardson's youth.  (*Richardson II, supra*, A159828, at p. 13.)  Richardson asserts our prior decision then "analyze[d] the effect of petitioner's age on the resentencing court's finding."  (See *Richardson II*, at p. 13.)  *Richardson II* inferred that the judge at the section 1170.95 hearing was aware of Richardson's age based on references in the record.  (*Richardson II*, at p. 15.)  We stated that given the numerous other factors supporting the trial court's reckless indifference to human life finding, even if the trial court had more explicitly addressed Richardson's age, this factor would not have tipped the scales in Richardson's favor.  (*Ibid.*)

Second, the People contend that Richardson was not prejudiced because the trial court found beyond a reasonable doubt that Richardson was the actual killer.  Under sections 189, subdivision (e) and 1170.95,

15

subdivision (d)(1), a defendant who is the actual killer is not eligible for resentencing. Accordingly, the People assert that the trial court's actual killer finding provides a separate, independent basis for its denial of the section 1170.95 petition and, therefore, Richardson was not prejudiced by his counsel's failure to rely on youth as a factor to show he did not act with reckless indifference to human life.

We find the People's arguments unpersuasive given the Supreme Court's order to show cause, which specifically instructs us to determine "why petitioner is not entitled to relief based on his claim that trial counsel rendered ineffective assistance *by failing to argue that petitioner's youth at the time of the offense should be one of the factors considered during the resentencing hearing under Penal Code section 1170.95 . . . .*" (Italics added.) " 'Issuance of an OSC . . . indicates the issuing court's preliminary assessment that petitioner would be entitled to relief if his factual allegations are proved.' " (*People v. Duvall* (1995) 9 Cal.4th 464, 475.) By issuing the order to show cause, the Supreme Court determined petitioner made a prima facie case for relief. (*Ibid.*) At the very least, the Supreme Court's issuance of the order to show cause requires that we reconsider our statement in *Richardson II* that further consideration of Richardson's youth would not have altered the trial court's determination that he acted with reckless indifference to human life.

Further, the petition filed with the Supreme Court attached our decision in *Richardson II*, which includes in the procedural background that (1) the jury did not find that Richardson intentionally discharged a firearm (§ 12022.53, subds. (c), (d)) but did find he used a firearm (§ 12022.53, subd. (b)) and (2) the trial court's denial of the section 1170.95 petition was based on both its finding that Richardson was the actual killer and its finding that

16

he was a major participant in the robbery and acted with reckless indifference to human life. Thus, the Supreme Court was aware of the potentially inconsistent findings by the jury and the trial court at the section 1170.95 hearing regarding whether Richardson was the actual killer. However, the Supreme Court's order focuses solely on the impact of youth factors on the major participant/reckless indifference findings. We infer that the Supreme Court questioned the validity of the trial court's actual killer finding on this record. It instructed us to focus only on the youth issue as it impacts the finding of reckless indifference to human life. We shall do as instructed.

2. *Impact of Youth Factors on Finding of Reckless Indifference to Human Life*

The habeas corpus petition argues defense counsel should have presented evidence of petitioner's " 'immaturity, vulnerability and lack of true depravity' " at age 16, by showing petitioner had no history of violence before the offense and no violence since he has been incarcerated. It further states that it "appears [petitioner was] the only juvenile involved in this crime" and suggests that defense counsel should have brought this to the trial court's attention. According to the habeas corpus petition, Richardson's codefendant, Davon Young, was an adult offender who pleaded no contest to robbery with an enhancement for committing the offense while on bail.[7] The habeas corpus petition further asserts, "The brother of [S.R.], who owned and likely drove the van that was seen to be involved in this robbery, was also an adult." The supporting evidence cited in the habeas corpus petition does not state who owned or drove the van at the time of the crime, or that S.R.'s

---

[7] We grant petitioner's request that we take judicial notice of the record in *Richardson I* and *Richardson II*.

17

brother was an adult, although it suggests a connection between the van and a relative of S.R.[8]  The petition states, without any evidentiary support, "Petitioner was introduced to this family because he became sexually involved with the adult sister of [S.R.] and her brother."  Finally, the petition argues that petitioner was following the directions of his codefendant to leave the scene after the victim was shot.  Petitioner cites to M.A.'s testimony that when she looked out the window after she heard the gunshot, she heard one of the coparticipants say, " '[L]et's go, go, go.' "

Petitioner submitted additional declarations with his traverse, including one from his maternal grandmother, who raised him, and one from a church pastor who knew Richardson and his family.  Richardson's grandmother's declaration attests to his good character, evidenced by his helping his grandmother after she became disabled.  She asserts Richardson was friends with the younger brother of S.R. and L.R. and became sexually involved with L.R., who was then in her mid-20's.  She further declares that Richardson committed the robbery "with members of the [R.] household."  The church pastor's declaration also attests to Richardson's good character; describes him as respectful, loving, and caring; and states he volunteered to help clean up streets in his neighborhood.  Additional exhibits petitioner submitted with his traverse are the probation officer's report and recommendations; records of his successful completion of prison educational

_____

    [8] The habeas corpus petition cites to testimony of Detective Andersen stating that he had seen the van before, when "there was an arrest made out of that vehicle in which [A.R., J.O., and C.S.] were stopped in that van." Detective Andersen confirmed that A.R. was related to S.R.  He further testified that the arrest of the individuals in the van related to another incident.  Only two individuals were arrested for Al Junaidi's murder, and Detective Andersen testified he was not ever able to identity the third individual involved.

18

programs; codefendant Young's criminal record; and copies of two neuroscience articles discussed in *Miller v. Alabama, supra*, 567 U.S. 460, *Roper v. Simmons* (2005) 543 U.S. 551, and *Graham v. Florida, supra*, 560 U.S. 48.[9]

According to petitioner, had the trial court been given evidence of petitioner's " 'immaturity, impetuosity, and failure to appreciate risks and consequences,' " it would have changed the court's analysis of petitioner's capacity for subjective awareness of the risk created.

Richardson argues the facts of his case are "remarkably close" to those in *Moore, supra*, which granted a habeas corpus petition challenging the sufficiency of the evidence supporting a felony-murder special-circumstance finding. (68 Cal.App.5th at p. 439.) We find *Moore* readily distinguishable. In *Moore*, the 16-year-old defendant and two coparticipants stole a car from a mall and then drove around the mall parking lot looking for a carjacking target. (*Id.* at p. 440.) One of the coparticipants got out of the car alone and robbed a family at gunpoint and then, without provocation, shot one of the victims. The shooter then got back into the car the defendant was driving, and they left the scene. (*Id.* at p. 441.) Moore admitted he stole a car and that the robbery and shooting occurred while he was driving a stolen car. (*Id.* at p. 443.) However, Moore never left the car during the robbery and

---

[9] Following the petitioner's submission of multiple exhibits with his traverse, we requested supplemental briefing regarding the propriety of considering evidence submitted with a traverse. The People's supplemental brief conceded that a traverse and accompanying exhibits may provide additional facts to support claims made in the petition for writ of habeas corpus, as long as they do not add new claims to the petition. The People objected only to certain exhibits that postdated Richardson's March 2, 2020 resentencing hearing because such exhibits were not available for Richardson's counsel to present at the resentencing hearing. Richardson withdrew the exhibits that postdated March 2, 2020, and we disregard them.

shooting, and he did not use a gun. (*Id.* at p. 452.) In contrast, Richardson was an active participant in the robbery who wielded a firearm. Although both Richardson and Moore were 16 years old when they committed their respective crimes, their roles and their actions toward their victims differed significantly. "[D]efendants who have shown their culpability was too slight under *Banks* and *Clark* 'are those who were not wielding guns themselves and also not present for the shooting (either because they were acting as getaway drivers or because they were involved in the planning of the crime only).' [Citations.]" (*People v. Bascomb, supra*, 55 Cal.App.5th at p. 1090.)

More recently, *Harper* considered whether a jury's robbery-murder special-circumstance finding must be vacated because under *Banks* and *Clark* the evidence did not establish that the defendant, who was 16 years old at the time of the offense, was a major participant in the robbery or acted with reckless indifference to human life. (*Harper, supra*, ___ Cal.App.5th ___ [p. 2].) The defendant was present during the robbery of a shopkeeper known to the defendant and his coparticipants, although he stayed in the front section of the store while his coparticipants handcuffed the victim and took him into a bathroom, where they cut him with a knife, shot him, and robbed him of his wallet. (*Harper, supra*, ___ Cal.App.5th ___ [pp. 3–4].) The defendant interacted with his coparticipants during the robbery; stole merchandise from the store; heard pounding and yelling coming from the bathroom, indicating the victim was struggling; and heard the gunshot. (*Harper, supra*, ___ Cal.App.5th ___ [pp. 4, 16, 19].) The court found sufficient evidence that defendant was a major participant in the robbery and acted with reckless indifference to human life based on the *Banks* and *Clark* factors. (*Harper, supra*, ___ Cal.App.5th ___ [pp. 10–22].) It then addressed whether the defendant's youth should be considered to decrease his

20

culpability. (*Harper, supra*, ___ Cal.App.5th ___ [p. 22].) It assumed, without deciding, that youth is a proper factor that may be considered under the totality of the circumstances. (*Harper, supra*, ___ Cal.App.5th ___ [pp. 22–23].) The court found the defendant's youth did not warrant a different result where the evidence showed defendant, who was only a few days shy of his 17th birthday and held himself out as a 19-year-old, willingly participated in the robbery of the shopkeeper despite knowing there was a very high risk the victim would die, gave a shotgun to a coparticipant as they entered the store, told another coparticipant where she could find knives during the robbery, took merchandise from the store, and made statements during and after the robbery that reflected a callous indifference to whether the victim lived or died. (*Harper, supra*, ___ Cal.App.5th ___ [pp. 30–32].)

The facts of this case fall somewhere between those in *Moore* and *Harper*. Richardson actively participated in the robbery from start to finish and used a gun during the robbery, and his response to the shooting was to physically struggle with the injured victim to complete the robbery before leaving him to die. However, the duration of the crime was short, and there is no information regarding Richardson's knowledge of his coparticipants' propensity for violence. (*Scoggins, supra*, 9 Cal.5th at p. 677.)

The trial court's ruling references the multiple *Clark–Scoggins* factors supporting its determination. However, it does not address how Richardson's youth may have impacted these factors. Given that Richardson's counsel made no such argument, it is understandable that the trial court's ruling is silent on the issue. However, as noted *ante*, we agree with *Moore*, *Ramirez*, and *Harris* that youth should be considered in determining whether a defendant acted with reckless indifference to human life. A defendant's youth has particular relevance to the subjective element of "reckless

21

indifference to human life," which requires that " '[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed,' and he or she must consciously disregard 'the significant risk of death his or her actions create.' " (*Scoggins, supra*, 9 Cal.5th at p. 677.)

We cannot say there is no reasonable probability that the trial court would have ruled differently if defense counsel had explicitly argued and presented evidence that Richardson's youth should be considered in determining whether Richardson acted with reckless indifference to human life. Therefore, we remand for a new hearing at which Richardson's counsel may present evidence and argument regarding the impact of Richardson's youth. We do not hold that Richardson's age is the deciding factor. Nor do we decide whether Richardson acted with reckless indifference to human life when his age, combined with the other *Clark–Scoggins* factors, is considered. Rather, we leave it to the trial court to determine on remand, with the benefit of evidence and argument regarding the impact of Richardson's youth at the time of the offense, whether Richardson's actions at the age of 16 constituted reckless indifference to human life such that he is ineligible for resentencing under section 1170.95.

## DISPOSITION

The order denying Richardson's section 1170.95 petition is vacated, and the matter is remanded for a new evidentiary hearing at which Richardson may argue, and the trial court shall consider, the impact of Richardson's youth at the time of the offense as a factor in determining whether Richardson acted with reckless indifference to human life.

_____
Jackson, P. J.

WE CONCUR:


_____
Needham, J.


_____
Burns, J.